UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| | ) | |
| E.K., by and through his Parent and Natural Guardian, E.K, | ) ) | Civil File No. |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | **PETITION AND** |
| MINNEAPOLIS PUBLIC SCHOOLS, SSD NO. 1, | ) ) | **MEMORANDUM IN SUPPORT OF PETITION FOR ATTORNEY'S FEES** |
| Defendant. | ) ) | **AND COSTS** |
| | ) ) | |
| | ) | |

COMES NOW THE Plaintiffs to petition the Court for fees and costs under the Individuals with Disabilities Education Act (IDEA), as a prevailing party pursuant to the final order in a Minnesota Department of Education special education administrative hearing MDE File No. 14-0023H; OAH File No. 48-1300-31498 (ALJ Order). *Attached*.

## I. PRELIMINARY STATEMENT

This is an action for payment of attorney's fees and costs associated with a special education administrative hearing initiated on E.K's (Eric) behalf. Eric is a black American with developmental disabilities who attends Minneapolis Public Schools (MPS). Over the course of his education, Eric has been placed into increasingly restrictive education settings. Despite the more intensive education settings intended to intervene on Eric's disabling conditions, Eric's education was not successful and he continued to receive excessive suspensions for minor disciplinary conduct. The excessive suspensions violated his rights as a disabled student under the Individuals with Disabilities Education Act (IDEA).

1

The IDEA's purpose when it was enacted was to stem the tide of suspensions, exclusions and expulsions of children with disabilities from their public school programming.   Today, not only have the public schools returned to the practice of excluding children with disabilities from public instruction but also MPS has a long history of excluding children of color who have disabilities. Thus, Eric has two substantial challenges in gaining an education as a black, disabled boy.

On the 6th of May 2014, Erica, on behalf of her son, filed a complaint protesting the suspensions and requesting a change in education programming for Eric.  As a result of the complaint, MPS was found to have violated Eric's rights under the IDEA because of the excessive suspensions.  On the 12th of September 2014, the Administrative Law Judge (ALJ) ordered MPS to provide Eric with compensatory education services in the form of an outside expert to attend, participate in and direct the educational programming of Eric and his team for the 2014/14 school year.

## II.    JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(3).

Venue is appropriate in this United States District Court pursuant to 28 U.S.C. § 1391.

## III.    OPERABLE STATUTE

The Individuals with Disabilities Education Act contains a fee-shifting statute that provides as follows:

(3) Jurisdiction of district courts; attorneys' fees
(A) In general
The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.
(B) Award of attorneys' fees

(i) In general In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—

    (I) to a prevailing party who is the parent of a child with a disability;

    (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

    (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

(ii) Rule of construction - Nothing in this subparagraph shall be construed to affect section 327 of the District of Columbia Appropriations Act, 2005.

(C) Determination of amount of attorneys' fees

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

20 U.S.C. § 1415(i)(3)(A)-(C).

## IV.   FACTS

Eric is a fifteen-year-old African American student born on the 13th of July 1999.  Eric has been diagnosed with developmental delays and social, emotional and behavioral disorders. He is a student eligible to receive special education and related services under the Individuals with Disabilities Education Act (IDEA).  Eric resides with his mother, Erica, in Minneapolis, Minnesota and is a resident of Minneapolis Public Schools.

Minneapolis Public Schools (MPS) is a public school within the meaning of the IDEA with a principal place of business at 1250 West Broadway Avenue, Minneapolis, Minnesota.  At all times relevant herein, MPS was responsible to provide Eric with special education and related services consistent with the IDEA and state law.

MPS placed Eric, at the beginning of his 9th grade, into Harrison.  Harrison, further described below, is a locked, and entirely segregated education program within MPS for students with emotional, behavioral disorders (EBD).  None of the individuals or professionals working with Eric thought this was an appropriate placement for Eric because his is a vulnerable student.  Eric is vulnerable to his misbehaving peers because of his cognitive deficits and desire to fit in.

While Eric was attending his 9th grade school year at Harrison, he was repeatedly and excessively suspensions for minor disciplinary infractions.  His mother, Erica, along with Eric's Hennepin County Social Worker, Angela Davis, worked with MPS to change his program and to stop the persistent suspensions.  Erica also asked that her private social worker, Jenny Littlewolf, assist in stopping the suspensions and getting Eric's education needs met.

During the 9th grade, Eric's long standing and treating psychiatrist, Dr Caromyr Figueroa, with Hennepin County Child Psychiatry (HCMC) concluded that Eric's cognitive and functional skills are mild to moderately impaired necessitating "significant support and assistance to sequence and make sense of information, organize and complete practical daily tasks, understand what is expected of him and translate that information into actions, and problem solve in the academic and social settings."

After Eric had been routinely and excessively suspended from Harrison, Dr Figueroa on the 14th of April 2014 wrote the following:

> I would encourage the educational team to re-evaluate his qualifications for special education services. Eric is a vulnerable patient, and in my professional opinion, the EBD programming at Harrison may not be a suitable fit. I feel it is imperative for his growth and development to be placed into a more suitable educational setting that will address his low cognitive functioning.

Dr Kristen Wiik, who worked with Dr Figueroa to address Eric's developmental and mental health disabilities, endorsed Dr Figeuroa's recommendation.  A year earlier, Dr Wiik in

May of 2013 completed a comprehensive pediatric neuropsychological evaluation of Eric and had made recommendations for education programming for Eric in her report.

The upshot of all the recommendations and requests for MPS to stop suspending Eric and find a more suitable program than Harrison, was that MPS was either unwilling or unable to propose any alternatives. As a result, Erica met with and retained counsel to represent her son, Eric.

### HARRISON

Harrison is a locked, level IV emotional/behavioral disorder (EBD) program in Minneapolis Public Schools. The EBD label is a subjective, stigmatizing and umbrella label for children perceived to be disruptive. In Minnesota, more than 4 percent of all black students are identified as EBD. That rate is *three* times the national average for black students across the country. In Minnesota, the proportion of black boys in the EBD is the highest in the country.

Minneapolis Public Schools has a black student population of approximately 37%, however, black males are approximately 80% of the students in Harrison. The percentage of black teachers in the Harrison program is less than 10%, while the remaining educators and staff are white. Harrison does not routinely graduate students or return students to the mainstream. It is an EBD control-and-containment education program similar to a juvenile detention facility rather than an education facility. The disparities are evident in the lack of regular education curriculum, or student progress in that curriculum, no access to sports and extracurricular activities, unequal facilities and activities, no school-based organizations, the lack of return to the mainstream, graduation from high school, high levels of discipline and law enforcement - in a word anything like normal education experience.

**ADMINISTRATIVE HEARING**

Ms Kirk retained counsel to represent her son Eric.  Eric is a black boy with developmental and mental health disabilities.  On the 6th of May 2014, Ms Kirk, through legal counsel, filed a Complaint with the Minnesota Department of Education requesting an administrative hearing to address her son's education.  Prior to requesting an administrative hearing, Ms Kirk attended the IEP team meetings and advocated for her son's education.

At the time the complaint was filed, Eric was the subject of routine and excessive suspensions from school often for minor disciplinary conduct.  Ms Kirk requested the administrative hearings to halt the suspensions and to get the appropriate program and services for her son.

Prior to the administrative hearing, the parties met on the 16th of May 2014 to participate in the statutorily mandated resolution session. *Kane Aff.*  In an effort to preserve parties' resources, the IDEA has a specific statutory requirement that the parties meet before an administrative hearing proceeds forward to afford the parties the opportunity to resolve the claims:

> **(B) Resolution session**
> **(i)** Preliminary meeting Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint—
>> **(I)** within 15 days of receiving notice of the parents' complaint;
>> **(II)** which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;
>> **(III)** which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
>> **(IV)** where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational

agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).

20 U.S.C. 1415(f)(1)(B).  The Plaintiffs participated in the resolution session, discussed the complaint and identified the relief they were seeking.  *Kane Aff.*  The parties were unable to reach an agreement on any aspect of the relief the Plaintiffs sought.

Prior to the administrative hearing, on the 30th of May 2014, MPS provided Eric and his mother the following offer:

1.  Referral to an outside program but no admission;
2.  25 hours of compensatory education services; and
3.  $500.00 in attorneys' fees and costs.

Ms Kirk rejected the offer because the referral to an outside program without MPS ensuring admission was illusory relief, the compensatory education services were too modest, nowhere in the offer was any change to Eric education program addressed and the offer of fees was inadequate.

The administrative hearing in this matter was held on the 10th, 11th, 15th and 16th of July 2014.  At the conclusion of the hearing, the ALJ issued a final decision on the 14th of September 2014, finding that MPS had violated Eric's rights through the excessive suspensions.  ALJ Order. The ALJ awarded the following relief:

As compensatory education, the School District shall retain Dr. Kristen Wiik to assist the IEP team in evaluating Student and designing and amending Student's IEP throughout the 2014 – 2015 school year. Dr. Wiik shall be allowed to conduct any further evaluation of Student that she believes may be helpful to those duties.

*ALJ Order*, p. 19-20.  MPS has not appealed the decision.

Prior to bringing the Petition for Fees and Costs, Ms Kirk, through counsel, attempted to open up settlement discussion and provided an offer of settlement to MPS.  MPS once again declined to discuss or negotiate settlement of the claims.

**PLAINTIFFS' ENFORCEMENT ACTIONS WITH THE MDE**

After the ALJ Order was issued, MPS through its counsel, initially refused to implement the order, asserting that it would seek a Motion for Reconsideration and an appeal.  *Kane Aff.* After multiple efforts on Plaintiffs' part to enforce the order culminating in a written request to the MDE to enforce the order, MPS agreed to retain Dr Kristin Wiik.  *Id.*

The MDE is statutorily charged with the duty to monitor and enforce final orders that result of special education administrative hearings.  Minn. Stat. § 125A.091, subd. 25.

At the time that Dr Wiik was retained by MPS, MPS sent correspondence to Plaintiffs' counsel setting forth the following limitations related to the implementation of the order:

1. An unidentified communications protocol that restricted Plaintiffs contact with Dr Wiik;
2. An unidentified time-limiting contract;
3. Refusal to provide to Plaintiffs essential documentation in advance of meetings with Dr Wiik;
4. Refusal to reschedule meetings when essential documents were not available in advance of meetings with Dr Wiik.

In each instance, Plaintiff was required to bring the impermissible limitations to the attention of the MDE for the purposes of enforcement.  In each instance, once the Plaintiffs made the enforcement requests in writing, MPS backed down off the limitations. *Kane Aff.*  In each of these instances, MPS set forth the limitation in correspondence but declined to provide documentation to Plaintiffs setting forth the limitations.  In each instance, Plaintiffs were required to expend time and resources to refute the limitations and enforce the final ALJ order.

**PREVAILING RATES IN THE COMMUNITY**

Plaintiffs' attorney, a practitioner with 24 years of experience in education litigation, including experience with the United States District Court and Eighth Circuit Court of Appeals, charges $300.00 per hour.  *Kane Aff.*  She is one of two attorneys who routinely represent families and children with special needs in special education administrative hearings.  *Id.*

The hourly rate is well within the norm within the community. For example, this court in 2011 approved an hourly rate of $600, but noted that this was at the "upper end" of allowable fees in the community. See *Madison v. Willis*, Civil No. 09-930 (DWF/AJB) (D. Minn., 2011). In 2007, this court approved a $500 hourly rate for a trial attorney with 30 years experience. *King v. Turner*, 2007 WL 1219308 (D. Minn., 2007).

## V.    ARGUMENT

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees . . . (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. §1415(i)(3)(B)(i). Courts typically follow a two-pronged inquiry to determine attorneys' fees under the IDEA by, first, determining if the party seeking fees is a "prevailing party" and, then, determining what fees are "reasonable."

With respect to the first prong, the Supreme Court has "long held that the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant," reflecting "the fact that statutes that award attorney's fees to a prevailing party are exceptions to the 'American Rule' that each litigant bear [his] own attorney's fees." *Astrue v. Ratliff,* 560 U.S. 586, 130 S. Ct. 2521, 2525 (2010) (internal quotations and citations omitted; brackets in original). The Court has made clear that just because a party has "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," does not trigger "prevailing party" status.

9

*Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Resources,* 532 U.S. 598, 600 (2001) ("*Buckhannon*"). Rather, the "touchstone of the prevailing party inquiry" is "'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole v. Wyner,* 551 U.S. 74, 82-83 (2007) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-793 (1989)).

According to the legislative history, Congress did not intend the IDEA to be interpreted any differently from other prevailing party fee-shifting statutes. *See John T.,* 318 F.3d at 557; *J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119, 124 (2d Cir. 2002). When Congress added the fee-shifting provision to the IDEA's predecessor statute, the Education of the Handicapped Act, the Senate Committee on Labor and Human Resources provided that "it is the committee's intent that the terms 'prevailing party' and 'reasonable' be construed consistently with the U.S. Supreme Court's decision in *Hensley v. Eckerhart,*" which involved 42 U.S.C. § 1988. S.Rep. No. 99-112, at 13 (1986), *reprinted* in 1986 U.S.C.C.A.N. 1798, 1803 (footnote omitted).

## I.   THE PLAINTIFFS ARE THE PREVAILING PARTY UNDER THE IDEA.

Plaintiff assert that they are the prevailing party because the ALJ order specifically identifies the violations under the IDEA, awards relief for those violations and awards relief that will directly benefit the Plaintiffs.

The Eighth Circuit adopted *Hensley's* "'typical' definition of 'prevailing party' for attorneys' fees purposes is a party who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Fast v. School District of City of LaDue*, 728 F.2d 1030 (8th Cir. 1984).  In adopting *Hensley*, the Eighth Circuit was clear to point out that:

[T]he words and phrases selected by the Supreme Court to describe who is a "prevailing party" are significant. A plaintiff is a prevailing party if he or she succeeds "on any significant issue ... which achieves some of the benefit the parties sought in bringing suit." 103 S.Ct. at 1939. It is not necessary that a plaintiff succeed on all of the significant issues, or that the court award all of the benefit sought by the complaint. In addition, the Supreme Court describes its test as "a generous formulation" and stresses that a plaintiff who meets it is only brought "across the statutory threshold" of eligibility for a fee award. The amount of the award, as is fully explained by the *Hensley* opinion, is another matter entirely. A plaintiff may be a "prevailing party" and still, because of failure to prevail on other issues, not receive full compensation for all of the time and expense invested in a case.

*Fast*, at 1033-34.

The Eighth Circuit Court of Appeals identified a *prevailing party* as the party who obtained "actual relief on the merits of [the] claim [that] materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 S.Ct. 566 (1992). Any relief obtained "`must directly benefit [the plaintiff] at the time of the judgment or settlement.'" *Warner v. Indep. Sch. Dist. No. 625,* 134 F.3d 1333, 1338 (8th Cir.1998) (quoting *Farrar,* 506 U.S. at 111, 113 S.Ct. 566); *Drennan v. Pulaski County Special School Dist.*, 458 F.3d 755 (8th Cir. 2006).

In this case, the Order required MPS to retain and keep Dr Wiik[1] as a member of the IEP team with the ability and authority to initiate additional evaluations and assessments of Eric and make recommendations for his education programming at Harrison for the 2014/15 school year. The additional evaluations, a remedy Plaintiffs sought in the hearing, along with Dr Wiik's program recommendations will be of significant benefit to Eric as a highly trained professional will now be directing Eric's education with the IEP team.

---

[1]   Dr Kristen Wiik is the professional the Plaintiffs proposed to conduct an independent evaluation of Eric to update his education needs.

II.     THE PLAINTIFFS' FEES AND COSTS ARE REASONABLE.

In determining a reasonable award of attorney fees, the courts begin with the "lodestar" amount, obtained by calculating "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988); *see also Fair Isaac Corp. v. Experian Info. Solutions Inc.,* 711 F. Supp. 2d 991, 1009 (D. Minn. 2010) (using the *Hensley* lodestar method to assess a fee request submitted pursuant to contractual language). The party seeking an award for their attorney fees must submit adequate evidence to demonstrate the hours worked and rates claimed. *Hensley,* 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. In addition, the Court must exclude claimed hours that were not "reasonably expended[,]" such as hours that are "excessive, redundant, or otherwise unnecessary . . . ."*Id.* at 434.  In determining a reasonable fee, a court may also take into account numerous other factors including "the [party's] overall success; the necessity and usefulness of the [party's] activity in the particular matter for which fees are requested; and the efficiency with which the [party's] attorneys conducted that activity." *Jenkins v. Missouri,* 127 F.3d 709, 718 (8th Cir. 1997).

Plaintiffs attach the professional billing statements from their counsel.   The billing statements reflect the specific activity, the time expended for each activity, and purpose of each activity.  Plaintiffs ask that the Court find the Plaintiffs are the prevailing party entitled to fees and costs in the underlying special education administrative hearing and petition for fees and costs in the amount of $56,886.00.

Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated:  14 October 2014

 /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
Attorney for Plaintiffs
420 Summit Avenue
Suite 306
Saint Paul, Minnesota 55102
651/222-8611